Rosalie LAMPL, Plaintiff,

v.

**Keith SMITH and Florence Smith, Defendants.**

Civ. A. No. 93–K–8.

United States District Court, D. Colorado.

July 7, 1994.

Richard Kaufman, John L. Springer, Aurora, CO, for plaintiff.

Daniel R. Frost, Caroline Fuller, Fairfield & Woods, Denver, CO, for defendants.

## MEMORANDUM OPINION

KANE, Senior District Judge.

Rosalie Lampl, Chapter 13 debtor, brought this action to recover her alleged interest in property she conveyed to Keith Smith in 1988 and damages. She claims Smith breached his agreement to sell the property and split the proceeds with her; misrepresented his intentions with respect to the property; misappropriated her interest in the property; and took advantage of his position of trust to induce her to convey title to him. Smith seeks dismissal of Lampl's claims, or in the alternative, summary judgment. Smith contends Lampl is judicially

estopped from asserting any claims related to the property at issue because she knowingly and affirmatively failed to identify any alleged interest in it when she filed her original Chapter 7 bankruptcy petition and schedules in March of 1990.

I find the doctrine of judicial estoppel inapplicable to plaintiff's claims, and deny Smith's motion.

## I. *Facts and Procedural History*

Rosalie Lampl claims she met Keith Smith in 1979, and soon thereafter, entered into an intimate relationship with him that continued at least until 1988. Smith denies such a relationship existed, admitting only that they were acquainted. Through at least most of period they knew each other, the parties were married to other people. On or about July 21, 1988, Lampl conveyed to Smith title to her Snowmass condominium. She claims Smith agreed to make the mortgage payments as they became due and then, when land values increased, to sell the property and split the proceeds with her. Sometime after the conveyance, Lampl claims her relationship with Smith "chilled" and they stopped seeing each other.

Smith never sold the condominium. Lampl and her husband were divorced, and in 1990, she filed a voluntary petition under Chapter 7 of the Bankruptcy Code. That case was administered as a no asset bankruptcy. At the time, Lampl claims she did not believe she had any ownership interest in the Snowmass condominium she had conveyed to Smith two years earlier. Lampl's debts were discharged, and the bankruptcy case was closed on December 10, 1990.

Lampl filed her action against Smith on January 4, 1993. Smith immediately moved to dismiss the suit, contending (1) that Lampl lacked standing to pursue her claims because they were assets of her bankruptcy estate; and (2) that Lampl was judicially estopped from pursuing her claims because she did not disclose them in the 1990 bankruptcy proceedings.

On April 28, 1993, Lampl moved to reopen the bankruptcy proceedings so that she could amend her petition to list her interest in the Snowmass condominium and her claims

against Smith related to it. *See* Mot. Reopen Bank. Proceedings, No. 90 B 02794 D (Bank. D.Colo.). She filed a motion to stay the proceedings in this court two days later, which motion I granted. *See* Mot. Stay Proceedings, No. 93–K–8 (D.Colo. April 30, 1993); Minute Order, No. 93–K–8 (D.Colo. April 30, 1993). Smith moved for reconsideration of the Minute Order, arguing that a reopening of the bankruptcy proceedings would have no effect on his contention that Lampl was judicially estopped from asserting her claims. Smith contended any trustee appointed in a reopened bankruptcy proceeding would be free to pursue claims against Smith directly, if the trustee deemed Lampl's claims meritorious. *See* Mot. Reconsider Minute Order April 30, 1993. No. 93–K–8 (May 6, 1993). While Smith's motion to reconsider was pending, the bankruptcy court granted Lampl's motion to reopen her Chapter 7 bankruptcy proceedings. The purpose of the reopening was expressly limited to determining "the rights, claims and interests, if any, of the Trustee, the Debtor and creditors, concerning the claim of Rosalie E. Lampl, legal and/or equitable, against Keith Smith and/or the real property located at 60 Fall Lane, Snowmass, Colorado." *See* Order, No. 90 B 02794 D (Bank.D.Colo.) (reopening case under new number 93 15516 DEC). Based on this order and the briefs of the parties, I denied Smith's motion to reconsider the April 30, 1993 order staying the district court proceedings. *See* Minute Order, 93–K–8 (D.Colo. June 1, 1993).

Tom Connolly was appointed trustee in the reopened bankruptcy proceedings. A review of the bankruptcy file indicates Connolly and Smith met in late 1993 to discuss Lampl's claims relating to the Snowmass condominium, agreeing to settle them for $10,000. *See* Mot. Approve Settlement Agreement, No. 93 15516 DEC (December 16, 1993). Lampl was apparently dissatisfied with the settlement discussions. Wishing to pursue her claims against Smith in the federal court action, Lampl moved to dismiss the bankruptcy case. *See* Mot. Voluntary Dismissal of Case, No. 93 15516 (December 13, 1993).

Both Smith and the trustee filed objections to Lampl's motion for voluntary dismissal,

claiming the settlement negotiated was in the best interest of Lampl's creditors, and that a dismissal would prejudice those creditors. *See* Objections to Mot. Voluntary Dismissal of Case, No. 93 15516 (January 14, 1994). Lampl disagreed, insisting the value of her interest in the condominium was "considerably greater" than $10,000 and claiming it would be in the best interests of her creditors *not* to approve the settlement. *See* Objection to Mot. Approve Settlement Agreement, No. 93 15116 DEC (February 8, 1994). Lampl also moved to strike Smith's objection to her motion for voluntary dismissal on grounds that Smith lacked standing to object. *See* Mot. Strike Objection to Mot. for Voluntary Dismissal of Case, No. 93 15516 DEC (February 8, 1994).

The bankruptcy court scheduled a hearing on these motions for March 15, 1994. Four days before the hearing, Lampl moved to convert the Chapter 7 case to a Chapter 13 proceeding and to withdraw her motion for voluntary dismissal. *See* Mot. to Convert, No. 93 15516 DEC (March 11, 1994). The bankruptcy court found Lampl had an "absolute right" to convert her case, terminated the services of the Chapter 7 trustee, and permitted Lampl to withdraw her motion for voluntary dismissal. *See* Order of Conversion & Revocation of Discharge, No. 93 15516 DEC (Bank.D.Colo. March 15, 1994). Lampl filed her final amended Chapter 13 plan and a motion to confirm the plan on May 20, 1994. The plan provides for full payment of Lampl's creditors and specifically permits Lampl to pursue the present action against Smith and retain 100% of any recovery. *See* Amended Chapter 13 Plan (attached to Motion to Abate Stay of Proceedings, filed June 28, 1994).

I have since granted plaintiff's motion to abate the stay that had been entered the previous year and ordered Smith's motion to dismiss set for oral argument on July 22, 1994. Minute Order, No. 93–K–8 (D.Colo. June 28, 1994). Having reviewed the briefs and the file's contents, I find oral argument would not assist me materially in deciding this motion and therefore vacate the setting.

## II. *Merits*

Because Lampl converted her reopened Chapter 7 case to a Chapter 13 proceeding, Smith concedes the issue of standing is moot and has withdrawn it as a basis for his motion to dismiss. Smith Reply to Br. Opp. Mot. Dismiss at 1–2. Smith contends Lampl's claims are still barred by the doctrine of judicial estoppel. Therefore, I address only that issue.

■ The doctrine of judicial estoppel prevents a party from adopting inconsistent legal positions in the same or related judicial proceedings. *See generally,* 1B J. Moore, J. Lucas, & T. Currier, *Moore's Federal Practice* ¶ 0.405[8] at p. III–54 to –56 (2d ed. 1984). It is to be distinguished from the doctrines of res judicata, collateral estoppel, and equitable estoppel. Res judicata and collateral estoppel relate to the effect of a final judgment, extinguishing a claim or cause of action on matters actually decided and necessary to the outcome. *See id.* at p. III–54. Equitable estoppel prevents a party from denying a set of facts that he has previously asserted to be true, if the party asserting estoppel relied on the earlier assertion and would be prejudiced by its repudiation. *Id.* at p. III–53.

■ The policy considerations underlying the doctrine of judicial estoppel aim to protect the judicial process from abuse. *Moore's Federal Practice, supra,* at p. III–57. Because judicial proceedings are designed to seek truth, an earlier position that can be explained as unadvised or the product of honest error generally will not preclude a party from later establishing the true state of facts. *Id.* (citations omitted). Absent proof of clear fraud, the assertion of a legal conclusion or opinion generally will not result in preclusion. *Id.*

Despite these limitations on its use, many courts refuse to recognize the doctrine of judicial estoppel. For example, the Tenth Circuit rejects the doctrine entirely, concluding the adoption of the doctrine would be "out of harmony with the great weight of authority independent of the rule," and that public policy can be vindicated "more practicably and fairly" through other means.

*United States v. 49.01 Acres of Land, More or Less,* 802 F.2d 387, 390 (10th Cir.1986), *quoting Parkinson v. California Co.,* 233 F.2d 432 (10th Cir.1956).

 In diversity cases such as this, however, federal law is not dispositive. State law governs the applicability of the judicial estoppel doctrine to Lampl's claims, *see Tri–State Generation & Trans. v. Shoshone R. Power,* 874 F.2d 1346, 1363 (10th Cir.1989), and Colorado has not rejected the doctrine.

 Colorado courts have applied the doctrine of judicial estoppel to prevent a party from repudiating in a later proceeding a legal position used to advantage in an earlier proceeding. *E.g. Peters v. Peters,* 82 Colo. 503, 261 P. 874, 875 (1927) (having obtained the dismissal of an appeal by arguing a particular court order was not final, plaintiff could not take the position in a later proceeding that the order was final); *New England Elec. Co. v. Matz,* 27 Colo.App. 30, 145 P. 1002 (1915) (when plaintiff proved note against bankrupt corporation, he was judicially estopped to claim in later proceeding that the corporation's president lacked authority to execute note).

 Smith contends the doctrine of judicial estoppel bars Lampl from claiming an interest in the Snowmass property when her claim conflicts with the position she knowingly chose to take in her 1990 bankruptcy petition. Mot. Dismiss at 5; at 5–6. Smith relies on matters outside the pleadings to support his position, and his motion to dismiss therefore must be treated as one for summary judgment. *See* Fed.R.Civ.P. 12(b).

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if the pleadings, attachments, and affidavits on file show there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. In ruling on Smith's motion, I must accept as true the statements in Lampl's affidavit, and draw all justifiable inferences in her favor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

Lampl asserts that the inconsistency between her 1990 bankruptcy petition and her present complaint resulted from her own ignorance, inadvertence, or excusable neglect. Resp. Mot. Dismiss at 4. At the time she filed her petition and attendant schedules with the bankruptcy court, Lampl claims she did not believe she had any ownership interest in the property and she did not know, understand, or appreciate that, as a result of her alleged agreement with Smith, she had an equitable interest in it. Lampl Aff'd. at ¶ 6.

Smith disputes Lampl's explanation. He reproduces excerpts of Ms. Lampl's deposition transcripts and references her bankruptcy schedules to show she was fully aware of her alleged interest in the Snowmass condominium in 1990, and that her failure to disclose it in her 1990 bankruptcy proceedings was a deliberate choice. Br. Supp. Mot. Dismiss at 6; Reply at 6–8. Clearly, there are questions of material fact with respect to Lampl's knowing "adoption" of an inconsistent legal position here sufficient to withstand a motion for summary judgment.

I deny Smith's motion for a more fundamental reason, however. Though not argued by Lampl in her response, the question of whether Lampl's claims are barred by the doctrine of judicial estoppel is moot. The discharge granted Lampl in the 1990 bankruptcy case has been revoked and the case reopened specifically to permit Ms. Lampl to identify and pursue her claims against Smith related to the Snowmass condominium. Order, No. 90 B 02794 D (Bank.D.Colo. May 21, 1993). The legal proceeding in which the allegedly inconsistent position was taken therefore ceased to exist in the form relied upon by Smith. As between the reopened bankruptcy proceeding and the present lawsuit, there is no inconsistency as would give rise to an application of the judicial estoppel doctrine.

Given the revocation of discharge and reopening of Lampl's bankruptcy case, it is difficult to argue—and I note Smith does not—that Lampl "succeeded" or obtained an "advantage" by omitting the Snowmass condominium from her original 1990 petition. For this additional reason, I find the doctrine of judicial estoppel inapplicable to Lampl's

claims against Smith in this action. *See Peters, supra,* 261 P. at 875; *New England Elec., supra,* 145 P. at 1002.

For the foregoing reasons, Smith's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment is DENIED, and my order setting oral argument on the motion for July 22, 1994, is VACATED.